Kristina Zemaitiene
General Delivery
Sandy, UT 84070
Tel: 801 755 5253

FILED
U.S. DISTRICT COURT
2018 MAR 16 P 2:15
DISTRICT OF UTAH
BY: DEPUTY CLERK

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| KRISTINA ZEMAITIENE,<br><br>Plaintiff,<br><br>v.<br><br>SALT LAKE COUNTY; UNIFIED POLICE DEPARTMENT OF GREATER SALT LAKE; former Chief of Police JAMES WINDER, in his official capacity; CITY OF TAYLORSVILLE, Taylorsville Precinct Chief of Police TRACY WYANT, in his official capacity; OFF DUTY SERVICES, INC.; CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS dba DESERET INDUSTRIES; RICK RICKS, in his individual and official capacity; MELANIE PERRY, in her individual and official capacity; JOEL KNIGHTON, in his individual and official capacity; DENISE LOVENDAHL, in her individual and official capacity;<br><br>Defendants. | CIVIL NO. 2:17CV00007DAK<br><br>**AMENDED COMPLAINT**<br><br>JURY DEMANDED |

Plaintiff, Kristina Zemaitiene, hereby complains against Defendants and alleges as follows:

## JURISDICTION AND VENUE

1. Jurisdiction is founded upon the existence of a federal question.

2. This is an action to redress the deprivation of rights, privileges and immunities secured by the Plaintiff by the First, Fourth, and Fourteenth Amendments of the United States Constitution and pursuant to 42 U.S.C. §§§ 1983, 1985 and 1988, 28 U.S.C. §§ 1331 and 1343 as well as pursuant to common law, statutory provisions, and the Constitution of the State of Utah.

3. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 (3 & 4).

4. This Court has jurisdiction to hear Plaintiff's state claims pursuant to 28 U.S.C. § 1367 as well as other relevant statutory and common law provisions.

5. All acts alleged herein are believed to have occurred in the State of Utah.

## JURY DEMAND

6. A trial by jury is requested in this matter.

## NOTICE OF CLAIM

7. Within one year after claim arose, Plaintiff filed Notices of Claim upon Defendants by delivering copies of the notices to the person designated by law as a person to whom such claims may be served.

8. The Notice of Claim was in writing and set out the nature of the claim, the time when and the place where and manner by which the claim arose, and the damages and injuries claimed to have been sustained by Plaintiff.

9. Defendants have neglected and failed to adjust the claims within the statutory time period.

PARTIES

10. Plaintiff is a citizen of Lithuania and was, at all times relevant hereto, a resident of the State of Utah, Salt Lake County.

11. At all times relevant hereto, Defendant Salt Lake County was and is a domestic municipal entity acting under the laws of the State of Utah with the authority to maintain and operate its own police department, the Unified Police Department of Greater Salt Lake. At all times relevant hereto, Defendant Salt Lake County trained, hired, employed Defendants James Winder, as chief of police, and police officers Joel Knighton and Denise Lovendahl. Defendant Salt Lake County implemented and took part in policies, customs and/or practices and engaged in training and supervision that set in motion the actions that led to the violation of Plaintiff's rights.

12. At all times relevant hereto, Defendant Unified Police Department of Greater Salt Lake ("Unified Police Department" or "UPD") was and is a municipal entity with a business address located in Salt Lake County, Utah which was organized and acting under the laws of the State of Utah. Defendant Unified Police Department was set up and acting on behalf of Defendants Salt Lake County and City of Taylorsville. Defendant Unified Police Department took part in the training, hiring, and employment of Defendants James Winder as chief of police and police officers Joel Knighton and Denise Lovendahl. Defendant Unified Police Department took part in or implemented policies, customs and/or practices and

engaged in training and supervision that set in motion the actions that led to the violation of Plaintiff's rights.

13. Defendant James Winder ("Winder") is and was, at all times relevant hereto, a resident of the State of Utah, Salt Lake County. At all times relevant hereto, Defendant Winder was the chief of police for the Unified Police Department. Further, Defendant Winder was employed by and/or acted on behalf of Defendants Salt Lake County, the Unified Police Department and City of Taylorsville. Defendant Winder, acting as a representative, agent and on behalf of and at the request of Salt Lake County, the Unified Police Department and City of Taylorsville, implemented policies, customs and/or practices at the direction of and with the authority of Salt Lake County, the Unified Police Department and City of Taylorsville. Defendant Winder was acting under color of law and/or pursuant to either official policy, or the custom or usage of Defendants Salt Lake County, the Unified Police Department and City of Taylorsville.

14. At all times relevant hereto, Defendant City of Taylorsville was and is a domestic municipal entity acting under the laws of the State of Utah with the authority to maintain and operate a police department. At all times relevant hereto, Defendant City of Taylorsville took part in training and employment of Defendants Chiefs of Police James Winder and Tracy Wyant and police officers Joel Knighton and Denise Lovendahl. Defendant City of Taylorsville implemented and took part in policies, customs and/or practices and engaged in employing,

training and supervision that set in motion the actions that led to the violation of Plaintiff's rights.

15. Defendant Tracy Wyant ("Wyant") is and was, at all times relevant hereto, a resident of the State of Utah, Salt Lake County. Defendant Wyant was and is the Chief of Police for the Unified Police Department Taylorsville Precinct. Further, Defendant Wyant is employed by and/or acts on behalf of City of Taylorsville and the Unified Police Department. Defendant Wyant, acting as a representative, agent and on behalf of and at the request of Defendants City of Taylorsville and the Unified Police Department implemented policies, customs and/or practices at the direction of and with the authority of Defendant City of Taylorsville and the Unified Police Department. It is alleged that Defendant Wyant was acting under color of law and/or pursuant to either official policy, or the custom or usage of Defendant City of Taylorsville and the Unified Police Department.

16. At all times relevant hereto, Defendant Off Duty Services, Inc. was and is a private entity with a principle place of business in Katy, Texas. At all times relevant hereto, Defendant Off Duty Services, Inc engaged in business operations through its subsidiary located in Salt Lake County, Utah. At all times relevant hereto, Defendant Off Duty Services, Inc. took part in hiring, training and employment of police officers Joel Knighton and Denise Lovendahl. Defendant Off Duty Services, Inc. implemented and took part in policies, customs and/or practices and engaged in hiring, training and supervision that set in motion the actions that

led to the violation of Plaintiff's rights. It is alleged that Defendant Off Duty Services Inc. acted under color of law.

17. At all times relevant hereto, Defendant Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter- day Saints *dba* Deseret Industries ("Deseret Industries") was and is a private entity with a business address located in Salt Lake County, Utah. At all times relevant hereto, Defendant Deseret Industries took part in employment, training and supervision of Defendants Joel Knighton, Denise Lovendahl, Rick Ricks and Melanie Perry. Defendant Deseret Industries implemented and took part in policies and procedures and engaged in employing, training and supervision that set in motion the actions that led to the violation of Plaintiff's rights. It is alleged that Defendant Deseret Industries acted under color of law.

18. Defendant Rick Ricks (" Ricks") is and was, at all times relevant hereto, a resident of the State of Utah, Salt Lake County. Defendant Ricks is and was , at all times relevant hereto, employed by Defendant Deseret Industries. It is alleged that Defendant Ricks was acting pursuant to either official policy, or the custom or usage of Defendant Deseret Industries and/or acting under color of law.

19. Defendant Melanie Perry (" Perry") is and was, at all times relevant hereto, a resident of the State of Utah, Salt Lake County. Defendant Perry is and was , at all times relevant hereto, employed by Defendant Deseret Industries. It is alleged that Defendant Perry was acting pursuant to either official policy, or the custom or usage of Defendant Deseret Industries and/or acting under color of law.

20. Defendant Joel Knighton ("Knighton") is and was, at all times relevant hereto, a resident of the State of Utah, Salt Lake County. Defendant Knighton is and was, at all times relevant hereto, a police officer employed by Salt Lake County, Unified Police Department, City of Taylorsville, Off Duty Services, Inc. and Deseret Industries. It is alleged that Defendant Knighton was acting pursuant to either official policy, or the custom or usage of Defendants Salt Lake County, Unified Police Department, City of Taylorsville, Off Duty Services, Inc. and Deseret Industries and/or acting under color of law.

21. Defendant Denise Lovendahl ("Lovendahl") is and was, at all times relevant hereto, a resident of the State of Utah, Salt Lake County. Defendant Lovendahl is and was, at all times relevant hereto, a police officer employed by Salt Lake County, Unified Police Department, City of Taylorsville, Off Duty Services, Inc. and Deseret Industries. It is lleged that Defendant Lovendahl was acting pursuant to either official policy, or the custom or usage of Defendants Salt Lake County, City of Taylorsville, Unified Police Department, Off Duty Services, Inc and Deseret Industries and/or acting under color of law.

22. It is alleged upon information and belief that Defendants are jointly and severally liable for the acts and occurrences alleged herein.

FACTUAL ALLEGATIONS

23. It is alleged that Defendants violated Plaintiff's civil rights and that as a result of the conduct and actions of the Defendants who were acting under color of law, Plaintiff was deprived of her civil rights guaranteed by the 1st, 4th, 5th and 14th

Amendments to United States Constitution, the Utah Constitution, the Civil Rights Act of 1871, 42 U.S.C. §§1983 and 1988, 28 U.S.C. § 1331 and 1343 as well as pursuant to common law, and relevant statutory provisions.

24.  As a result of Defendants' conduct, the civil rights of Plaintiff were violated. Specifically, Plaintiff's right to be free from unreasonable seizures, right to equal protection and  due process of law, right to free speech as well as other rights set forth herein were violated.

25.  This is also an action against Defendants for deliberate indifference to the rights, privileges and immunities secured by the Constitution of the United States, laws of the United States and of Utah, all as expressed in policies, customs, procedures and supervisory actions with respect to individual  Defendants and actions alleged herein after which deliberate indifference led to the deprivation of civil rights of Plaintiff.

26.  This is also an action under common law within scope of Title 42 of the United States Code, Section 1983 for the negligent and/or indifferent policy making, supervision, training and retention of individual Defendants  which led to the deprivation of civil rights of Plaintiff.

27.  On December 27, 2014, Deputy Joel Knighton ("Deputy Knighton") and Detective Denise Lovendahl ("Detective Lovendahl") of Unified Police Department Taylorsville Precinct attempted to violently arrest a shoplifting suspect, later identified as  Hernan Castagnoli(" Castagnoli"), in the parking lot of a Deseret Industries store located at 825 East 9400 South, Sandy, Utah.

28.   Deputy Knighton and Detective Lovendahl were not on duty at the time. Rather,  Deputy Knighton and Detective Lovendahl were working plain- clothes security for Deseret Industries under a business contract between Deseret Industries and a private security company, Off Duty Services, Inc.

29.  Zemaitiene worked as an associate  at the store but did not know that the store employed undercover  police officers to protect its property.

30.  Zemaitiene was sitting in her car in the store's parking lot after finishing her shift in the store,  when she noticed Deputy Knighton and Detective Lovendahl assaulting  Castagnoli in the  parking lot.

31.  Zemaitiene exited her car and ran to the scene to  assist  Castagnoli.

32.  Not knowing that  Deputy Knighton and Detective Lovendahl were police officers,  Zemaitiene believed that Castagnoli was being violated by two thugs.

33.  Once at the scene, Zemaitiene positioned herself at a safe distance from the fight and made  verbal pleas with Deputy Knighton and Detective Lovendahl to cease their assault on  Castagnoli.

34.  A short time after Zemaitiene's appearance,  Deputy Knighton and Detective Lovendahl let go of Castagnoli whereupon Castagnoli  got in his car and drove away.   Later, Castagnoli called the Sandy Police to report that he had been assaulted by "two store employees."

35.  After  Castagnoli's departure,  Deputy Knighton informed  Zemaitiene that he and Detective Lovendahl were  undercover  police officers working security at the store.

36.   At, or around the same time, Detective Lovendahl approached Zemaitiene pulled her police badge that was hung around her neck from beneath her civilian shirt, shoved it in Zemaitiene's face and chest-bumped Zemaitiene twice.

37.  After this assault,  Deputy Knighton and Detective Lovendahl started walking back into the store.

38.  Zemaitiene returned to her car to get her purse and  headed for the store to report the parking lot  incident  to a store manager.

39.  Once inside, Zemaitiene went to the  main office located at the back of the store.

40.  Upon  entering  the  office,  Zemaitiene found Deputy  Knighton  and  Detective Lovendahl  talking to job coach Brannon Bai ("Bai").

41. Zemaitiene proceeded to explain to job coach Bai that she had witnessed Deputy Knighton and Detective Lovendahl assaulting a store customer.   Job coach Bai told Zemaitiene to exit the office and wait in the hall.

42. During Zemaitiene's wait, assistant  store manager Rick Ricks ("Ricks") and job coach Melanie Perry ("Perry") arrived at the office while job coach Bai left the office.

43. After having waited  for about ten minutes, Zemaitiene reentered the office and asked for a permission to report the parking lot incident.

44.  Upon manager Ricks' permission,  Zemaitiene proceeded to accuse Detective Lovendahl  of a sexual assault for chest-bumping  Zemaitiene.

45. Upon the accusation, Detective Lovendahl informed Zemaitiene   that  she was going to charge Zemaitiene  with  an interference with Castagnoli's arrest.

46.   Detective Lovendahl handcuffed Zemaitiene and took her into custody in the office.

47.   After searching Zemaitiene's purse, Detective Lovendahl found Zemaitiene's driver's license which she used to complete citation for  Zemaitiene's alleged interference with Castagnoli's arrest.

48.   Meanwhile, manager Ricks informed  Zemaitiene that he was suspending Zemaitiene from  her work and trespassing  her  from all Deseret Industries stores.

49.   Zemaitiene refused to sign the citation because she, as a person with limited English proficiency,  did not understand everything that was written on the citation and was afraid that her signature would constitute her admission of guilt.

50.   Detective Lovendahl escorted Zemaitiene to her police car in the store's parking lot to transport  Zemaitiene to jail for refusing to sign the citation.

51.   While escorting  Zemaitiene to her police car, Detective Lovendahl told Zemaitiene that signing the citation  wasn't an admission of guilt, but an acknowledgment of receiving the citation. Upon hearing that,  Zemaitiene asked Detective Lovendahl to allow her to sign the citation.

52.  Lovendahl removed Zemaitiene's handcuffs and allowed her to sign the citation.

53.  After signing the citation, Zemaitiene was given a copy of the citation and released by Detective Lovendahl.

54.   Based on the citation and Deputy Knighton and Detective Lovendahl's police reports,  the  Sandy  City  Prosecutor's  Office  charged  Zemaitiene  with  an

Interference with Arresting Officer offense under Utah Code Ann. § 76-8-305 in the Sandy Justice Court.

55. Castagnoli was also charged with an Interference with Arresting Officer offence as well as retail theft by the same Sandy City prosecutor.

56. Castagnoli's both charges were later dismissed with prejudice by the justice court at the prosecutor's request.[1]

57. Neither the justice court nor the prosecutor dismissed Zemaitiene's interference charge, although Utah Code Ann. § 76-8-305 does not criminalize interferences with unlawful arrests.[2]

58. Prior to Zemaitiene's jury trial in a justice court, the prosecutor amended Zemaitiene's misdemeanor charge to an infraction to remove her right to a jury trial.[3] This manipulative move came after Zemaitiene had filed her proposed jury instructions which directed the jury to acquit Zemaitiene if they found that Zemaitiene acted in defense of Castagnoli.

59. Zemaitiene was first convicted of the alleged offense in the justice court and

---

[1] Since a justice court's order dismissing Castagnoli's charges did not provide any reason for the dismissal, Castagnoli's counsel informed Zemaitiene's counsel that the prosecutor had determined that Castagnoli did not shoplift and that Deputy Knighton and Detective Lovendahl lacked a lawful reason to arrest Castagnoli.

[2] Section 76-8-305 provides in pertinent part: " A person is guilty of a class B misdemeanor if the person knows, or by the exercise of reasonable care should have known, that a peace officer is seeking to effect a lawful arrest or detention of that person or another person and interferes with the arrest or detention..."

[3] In Utah, infractions do not carry a right to trial by jury.

then again following a de novo trial in a district court.[4]

60. Deputy Knighton and Detective Lovendahl had no lawful basis to arrest Castagnoli because Castagnoli had not shoplifted.[5] In addition, Deputy Knighton and Detective Lovendahl, as the UPD officers, used their police authority invalidly in the Sandy Police jurisdiction and for the purpose of harassing Castagnoli who is a foreign national.[6]

---

[4] Zemaitiene's bench trials were a constitutional aberration in that they were rigged against Zemaitiene by virtue of deliberately removing Zemaitiene's right to a jury. The judges in both trials exhibited a considerable bias in favor of Deputy Knighton and Detective Lovendahl by refusing to second-guess the truthfulness of their contradictory testimonies and to consider defense exculpatory evidence including the fact that Castagnoli's arrest was unlawful.

[5] Castagnoli was suspected of switching price stickers on a merchandise. Under Utah Code Ann. § 76-6-602(2), switching price stickers without an attempt to purchase the merchandise constitutes no offense. Castagnoli had never attempted to purchase or purchased the merchandise at the allegedly altered price.

[6] According to Deputy Knighton's police report, on December 27, 2014, Deputy Knighton observed Castagnoli carrying a merchandise which allegedly had a $10 price sticker on it. Later, Deputy Knighton saw Castagnoli leave the merchandise on top of a clothing rack and exit the store. Deputy Knighton checked the merchandise and saw that there was a $2 sticker placed over the $10 sticker. Deputy Knighton went outside and stopped Castagnoli in the parking lot to question about the stickers. Castagnoli stopped and fully cooperated with Deputy Knighton by answering all his questions. Because the stop yielded no information justifying Castagnoli's arrest, Deputy Knighton released Castagnoli.
After that, Deputy Knighton returned inside the store, found Detective Lovendahl and told her that he had "witnessed a male changing a price tag on an item and that he had attempted to stop the male, but the male refused to stop and was walking to his car in the parking lot." They both then went outside and, according to Deputy Knighton's May 4, 2016 trial testimony, the following happened: Deputy Knighton and Lovendahl approached Castagnoli and "asked him if [they] could talk to him and he kind of refused and at that point Officer Lovendahl decided that she was going to arrest him and bring him back in the store."
Deputy Knighton and Detective Lovendahl acted unlawfully when they repeatedly constrained Castagnoli's liberty after Deputy Knighton had already stopped,

61. Besides the unlawfulness of Castagnoli's arrest, Deputy Knighton  and Detective Lovendahl charged Zemaitiene for violating Utah Code Ann. § 76-8-305 which, at the time of Zemaitiene's alleged offense, was unconstitutionally vague.[7]

62. Currently, Zemaitiene's  appeal from her  criminal conviction is pending in the Utah Court of Appeals where she  challenges the unconstitutionality  of a prosecutorial amendment of Zemaitiene's charge among other issues.

63. Zemaitiene was charged, prosecuted and convicted  based on Deputy Knighton and Detective Lovendahl's fabricated statements.

64. Detective Lovendahl and Deputy Knighton knowingly fabricated inculpatory statements to justify Zemaitiene's charge brought by Detective Lovendahl  to retaliate for Zemaitiene's complaint about her and Deputy Knighton's misconduct, discredit Zemaitiene' eyewitness account about the parking lot incident and hurt Zemaitiene as a  foreign national.[8]

---

questioned and released Castagnoli.  Moreover, as  the UPD officers acting in the Sandy Police jurisdiction,  Deputy Knighton and Detective Lovendahl  used their police authority in violation of Utah Code Ann. § 77-9-3 which does not permit non-jurisdictional officers to invoke their police authority in circumstances where no crime has been committed in the officer's presence.

[7] Zemaitiene was accused of violating Utah Code Ann. § 76-8-305 which was amended by the Utah Legislature in 2017 to clarify that interfering with a police officer applies to any person who interferes, not just the person being arrested. At the time of Zemaitiene's arrest, the old and unclear version of  § 76-8-305 was in force which did not give  a clear notice that  interferences with other people's arrests were proscribed. Therefore, under the constitutional void- for- vagueness doctrine which invalidates vague statutes, Zemaitiene's arrest, prosecution and conviction should  have never  happened.

[8] At no point during the altercation,  Zemaitiene interfered with Deputy Knighton or Detective Lovendahl's actions. Zemaitiene kept her distance and only pleaded with the officers to end  their assault on Castagnoli. Had Zemaitiene interfered with the

65. While, in her police report, Detective Lovendahl did not state that she chest-bumped Zemaitiene, she did admit in the report that she pushed Zemaitiene at one point in the parking lot when she was walking back into the store because Zemaitiene was screaming at her.

66. Deputy Knighton's police report provided no details whatsoever as to how Zemaitiene allegedly interfered. In the report, Deputy Knighton used only one

---

arrest the officers would have arrested her on the spot and escorted to the store to cite her for interference. Instead, Zemaitiene was arrested only after she returned inside the store and complained about the officers' conduct.

On May 4, 2016, Deputy Knighton and Detective Lovendahl testified that Zemaitiene was not arrested in the parking lot or ordered to come with them into the store. Knowing that the failure to arrest Zemaitiene on the spot may look suspicious, Deputy Knighton wrote in his police report that "Zemaitiene was escorted back into the store." During his May 4, 2016 testimony Deputy Knighton recanted this claim by saying that "we just all kind of walked back into the store" and that Zemaitiene walked ahead of them in silence. Detective Lovendahl, on the other hand, wrote in her police report that "[she] went back into the store with [Zemaitiene] following [her] screaming". On May 4, 2016, Detective Lovendahl testified on direct examination that Zemaitiene "followed *us* into the store screaming and yelling." On cross examination, Detective Lovendahl said that " [Zemaitiene] followed *me* in the store screaming."

Also, in her police report, Detective Lovendahl knowingly made false statements that Zemaitiene had grabbed her hand during Castagnoli's arrest and that when she told Zemaitiene to back up and shook Zemaitiene off, Zemaitiene continued to " grab [her] and grab at [Deputy] Knighton".

Detective Lovendahl testified on May 4, 2016, that, during Castagnoli's arrest, Zemaitiene grabbed her only once, while Deputy Knighton testified that he was never touched by Zemaitiene but that he saw Zemaitiene grab onto Detective Lovendahl "one to two times." When asked if he could recall if Detective Lovendahl ordered Zemaitiene to back up, Deputy Knighton said that he could not recall even if Detective Lovendahl testified that "[she] was *yelling* police, back up, police, back up." On March 27, 2017, Deputy Knighton testified that he was *not sure* Zemaitiene grabbed Detective Lovendahl.

vague sentence to describe Zemaitiene's alleged interference: "Zemaitiene approached us on foot and attempted to interfere with the apprehension trying to aid the suspect."

67. Detective Lovendahl did not have a valid police authority to issue a citation to Zemaitiene. Under the UPD policy[9], Detective Lovendahl, as a non-jurisdictional officer, was obliged to contact the Sandy Police to process Zemaitiene's arrest including her citation. [10]

68. Castagnoli was also served with a UPD citation at his home.

69. On December 30, 2014, Zemaitiene filed a citizen's complaint against Detective Lovendahl with the Unified Police Department Taylorsville Precinct. No meaningful investigation was conducted by the Precinct.[11]

---

[9] The UPD Secondary Employment Policy No. 2-9-06(6) states in part: "Sworn members working extra-duty secondary employment outside the jurisdiction of the Unified Police Department will contact the appropriate law enforcement jurisdiction to document the detention and/or arrest of shoplifters, trespassers, etc. This ensures appropriate record keeping by the jurisdictional agency."

[10] Zemaitiene wouldn't have been prosecuted if the Sandy Police had been contacted to process Zemaitiene's arrest. The Sandy officer would have investigated the incident and decided that Castagnoli's arrest was unlawful and that there was no liability on Zemaitiene's part for her alleged interference with an unlawful arrest. The officer would have noticed that Detective Lovendahl had violated Zemaitiene's First Amendment right by arresting Zemaitiene after her complaint about the parking lot incident.

[11] Neither Zemaitiene nor Castagnoli was interviewed by anyone from the Precinct. On January 16, 2015, UPD officer Vaughn Allen called Zemaitiene to inform that her complaint was dismissed as unfounded. Officer Allen told Zemaitiene that he talked to Detective Lovendahl and Deputy Knighton, reviewed their police reports and came to a conclusion that officers acted appropriately. Officer Allen said that he and the UPD trusted their officers and believed their words. On August 22,

70. At all times herein, Defendants Knighton and Lovendahl had no cause, let alone probable cause or reasonable suspicion, to arrest and charge Zemaitiene.

71. Defendants Knighton and Lovendahl's unlawful actions were done willfully, knowingly and in conspiracy with Defendants Ricks and Perry and with the specific intent to deprive Zemaitiene of her constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and the Utah Constitution.

72. Defendants Ricks and Perry were eager participants, if not initiators, in the conspiracy because they harbored ill feelings towards Zemaitiene.[12]

73. Defendants Ricks, Perry, Knighton and Lovendahl shared the same goal to discredit Zemaitiene's witness account about the parking lot abuse to protect their employers from liability.

74. The conduct of Defendants Knighton and Lovendahl in restraining, arresting and prosecuting Zemaitiene proximately caused physical, emotional and financial injury to her , as well as physical, emotional pain and suffering, mental anguish,

---

2016, Zemaitiene filed a public records request with the UPD for copies of citizen's complaints against Deputy Knighton or Detective Lovendahl. Zemaitiene got a voice message from the Department which said that there were no complaints against either of the officers which means that Zemaitiene's 2014 complaint against Detective Lovendahl was unlawfully disposed of by the Department.

[12] On information and belief, Defendants Ricks and Perry falsely perceived Zemaitiene to be a Russian citizen and resented and retaliated against Zemaitiene for her "audacity" to bring her workplace issues to the attention of the Equal Employment Opportunity Commission. On one occasion, Defendant Perry referred to Zemaitiene as a Russian terrorist.

shock, fright, humiliation, embarrassment and deprivation of her constitutional rights. Zemaitiene suffered the trauma, debasement and humiliation as a result of being handcuffed, arrested without any cause and maliciously prosecuted in her place of work.

75. To defend against her false criminal charge, Zemaitiene had made sixteen court appearances and incurred legal and other expenses.

76. In addition, Zemaitiene is a person with a significant disability. The emotional trauma associated with baseless, malicious and manipulative prosecution exacerbated Zemaitiene's medical condition and affected her ability to be gainfully employed.

77. Zemaitiene have a constant fear and apprehension that she will, again, be subjected to a similar acts by the same or other police officers done to retaliate against her, as a foreign national, for her protected First Amendment activities.

78. The actions of Defendants Knighton and Lovendahl were the result of Defendants Salt Lake County, Unified Police Department, City of Taylorsville, Chiefs of Police Winder and Wyant, Off Duty Services Inc. and Deseret Industries' failure to properly train and supervise and discipline its employees and/or agents.

79. The constitutional abuses and violations by Defendant Salt Lake County through the actions of its Unified Police Department, Chief of Police Winder and officers Knighton and Lovendahl, by Defendant City of Taylorsville through the actions of Chiefs of Police Winder and Wyant, the Unified Police Department and officers Knighton and Lovendahl, by Defendants Off Duty Services through the

actions of its officers Knighton and Lovendahl and by Defendant Deseret Industries through the actions of its manager Ricks, job coach Perry and officers Knighton and Lovendahl, were and are directly and proximately caused by policies, customs and/or practices developed, adopted, implemented, enforced, encouraged and sanctioned by the above Defendants including the failure: (a) to adequately supervise and train its employees and/or agents; (b) to properly and adequately monitor and discipline its employees and/or agents and (c) to adequately and properly investigate complaints, instead, acts of misconduct were tolerated by the above Defendants.

80. Upon information and belief, Defendant Salt Lake County, acting through its Unified Police Department, Chief of Police Winder and officers Knighton and Lovendahl, Defendant City of Taylorsville, acting through its Chiefs of Police Winder and Wyant, the Unified Police Department and officers Knighton and Lovendahl, Defendant Off Duty Services Inc., acting through its officers Knighton and Lovendahl and Defendant Deseret Industries, acting through its manager Ricks, job coach Perry and officers Knighton and Lovendahl, developed, adopted, implemented, enforced, encouraged and sanctioned defective and/or unconstitutional policies, customs and/or practices with respect to their employees and/or agents' responsibilities and professional standards.

81. The Defendants Salt Lake County, the Unified Police Department, City of Taylorsville, Off Duty Services, Inc., and Deseret Industries, through their employees, agents, representatives have acted under color of state law and with deliberate indifference to the constitutional rights of Zemaitiene.

82. The various policies, custom or practices referred to above or the lack thereof were believed to be known to the Defendants and were the direct and proximate cause of the deprivation of Zemaitiene's Constitutional rights causing Zemaitiene to suffer physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

83. Specifically, Defendant Salt Lake County, acting through its Police Department, Chief of Police Winder and officers Knighton and Lovendahl, Defendant City of Taylorsville, acting through its Chiefs of Police Winder and Wyant, the Unified Police Department and officers Knighton and Lovendahl, Defendants Off Duty Services Inc., acting through its officers Knighton and Lovendahl and Defendant Deseret Industries, acting through its manager Ricks, job coach Perry and officers Knighton and Lovendahl, enforced a vague, and thus unconstitutional criminal statute, namely Utah Code Ann. § 76-8-305, against Zemaitiene (*see* ¶ 61).

84. Defendant Salt Lake County, acting through its Unified Police Department, Chief of Police Winder and officers Knighton and Lovendahl, Defendant City of Taylorsville, acting through Chiefs of Police Winder and Wyant, the Unified Police Department and officers Knighton and Lovendahl, Defendant Off Duty Services, acting through its officers Knighton and Lovendahl and Defendant Deseret Industries, acting through its manager Ricks, job coach Perry and officers Knighton and Lovendahl, developed, adopted, implemented, enforced, encouraged and sanctioned an unconstitutional as-applied policy pertaining to police secondary

jobs.  Under an agreement  between the Unified Police Department, Off Duty Services Inc. and Deseret Industries  and guided by the Unified Police Department's secondary employment policy, officers Knighton and Lovendahl provided their law enforcement services to Deseret Industries, a religious organization, in violation of the article I, section 4 of the Utah Constitution which prohibits the use of public property  for the support of any religious establishment. Officers Knighton and Lovendahl's use of  their police authority and  paraphernalia  to benefit Deseret Industries  is prohibited by the Utah Constitution.

85. In addition, the above corporate and municipal entities utilize their developed or adopted policies which are either discriminatory or unconstitutionally vague. [13]

86. Defendant Salt Lake County, acting through its Unified  Police Department, Chief  of Police Winder, Defendant City of Taylorsville, acting through  Chiefs of Police Winder and  Wyant and the Unified  Police Department and Defendants Off Duty Services Inc., and Deseret Industries failed to train their employees and/ or agents in skills  needed to  handle  recurring theft  situations  in retail  business environment  including in familiarizing them with  criminal theft statutes.

---

[13] The UPD' Law Enforcement Code of Ethics does not proscribe bias- based policing based on nationality or ethnicity. A pertinent part of the Code states: " [a] police officer shall perform all duties impartially, without favor or affection or ill will, and without regard to status, sex, race, religion, political belief or aspiration".
The UPD's secondary employment  policy does not  clearly  define  what police functions  UPD officers working secondary jobs outside of  their  UPD  jurisdiction are permitted  to perform (*see* ¶ 67 ). Such a vague policy is unconstitutional under the void for vagueness  doctrine.

87. Defendant Salt Lake County, acting through its Unified Police Department, Chief of Police Winder, Defendant City of Taylorsville, acting through Chiefs of Police Winder and Wyant and the Unified Police Department, Defendants Off Duty Services Inc. and Deseret Industries failed to supervise their employees and/or agents by failing to promulgate rules and/or policies requiring their employees (1) to report, testify and present their evidence truthfully and completely; (2) to provide truthful information to their fellow employees during performance of their official duties and (3) to limit their secondary employments hours to prevent fatigue and burnout. The above Defendants failed to prevent their off-duty officers working outside of the UPD jurisdiction from usurping the duties of the jurisdictional police officers including issuing criminal citations.

88. Defendant Deseret Industries failed to supervise its employees and/or agents by making a decision not to install surveillance cameras in its store's parking lot. Lack of surveillance encouraged store's security personnel to commit misconduct and allowed such misconduct to go undetected. Also, Defendant Deseret Industries' decision to hide the existence of off-duty police security personnel from other employees by telling the officers to blend in and disguise themselves by doing a non-security work in the store, put the employees at risk of an unwitting interference with the police actions.

89. Additionally, Defendant Deseret Industries condoned acts of misconduct of its

managerial employees.[14]

90. Defendant Salt Lake County, acting through its Police Department, Chief of Police Winder, Defendant City of Taylorsville, acting through Chiefs of Police Winder and Wyant and the Unified Police Department failed to meaningfully investigate Zemaitiene's complaint and discipline officers Knighton and Lovendahl for their unlawful arrest of Castagnoli which supports an inference that there is a de facto policy of making illegal arrests.

## CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 1983 and First Amendment( Retaliatory Arrest)

### Against Defendants Knighton and Lovendahl

91. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

92. By their conduct, as described herein and acting under color of state law, to deprive the Plaintiff of her right to freedom of speech under the First Amendment, the Defendants are liable for violation of 42 U.S.C. § 1983 which prohibits the

---

[14] Prior to the parking lot incident, job coach Perry, had retaliated against Zemaitiene on multiple occasions for her whistleblowing activities, but never faced any disciplinary action. Manager Ricks himself harassed and retaliated against another Deseret Industries' employee prompting the employee to file a court action against manager Ricks. Deseret Industries did not punish manager Ricks, either.

deprivation under color of state law of rights secured under the United States Constitution. Defendant police officers have violated Plaintiff's First Amendment right to speech by unlawfully arresting her after she had complained about their behavior to a store's management. Defendants' arrest of Plaintiff was aimed at deterring the exercise of her First Amendment right and interfering and/or terminating her lawful protected activity of criticizing police misconduct.

93. At the time of the complained of events, Plaintiff had the clearly established right to be free from retaliation for the exercise of her protected speech.

94. Any reasonable police officer knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

95. These individual Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith and in reckless disregard of Plaintiff's federally protected rights and acted in concert and joint action with each other.

96. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial. Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

97. In addition to compensatory, economic, consequential and special damages,

Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional and statutory rights of Plaintiff.

SECOND CLAIM FOR RELIEF

42 U.S.C. § 1983 and Fourth and Fourteenth Amendments (Wrongful Arrest)

Against Defendants Knighton and Lovendahl

98. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

99. By their conduct, as described herein, and acting under color of state law, to deprive the Plaintiff of her right to be free from unreasonable seizures and arrest without probable cause as required by the Fourth and Fourteenth Amendments, Defendants are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

100. At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from unreasonable seizures and arrest.

101. Any reasonable police officer knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

102. These individual Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith and in reckless disregard of Plaintiff's federally protected rights and acted in concert and joint action with each other.

103. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial. Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

104. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional and statutory rights of Plaintiff.

THIRD CLAIM FOR RELIEF

42 U.S.C. § 1983 and First and Fourteenth Amendments (Retaliatory Prosecution)

Against Defendants Knighton and Lovendahl

105.  Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

106.  By their conduct, as described herein, and acting under color of state law, Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for the violation of her constitutional right to be free from retaliatory prosecution. Defendant police officers have violated Plaintiff's First Amendment right to speech by initiating prosecution without a probable cause to retaliate for Plaintiff's complaint against Defendants. Defendants' prosecution of Plaintiff was aimed at deterring the exercise of her First Amendment right and interfering and/or terminating her lawful protected activity of criticizing Defendants' actions.

107.  Defendants' unlawful actions were done with the specific intent to deprive Plaintiff of her constitutional right. The prosecution by Defendants of Plaintiff constituted unlawful prosecution in that there was no basis for the Plaintiff's arrest and charge, yet Defendants continued with the prosecution.

108.  At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from retaliatory prosecution.

109.  Any reasonable police officer knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

110.  These individual Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith and in reckless disregard of Plaintiff's federally protected rights and acted in concert and joint action with each other.

111. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial. Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

112. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional and statutory rights of Plaintiff.

FOURTH CLAIM FOR RELIEF

42 U.S.C. § 1983 and Fifth and Fourteenth Amendments ( Right to Liberty)

Against Defendants Knighton and Lovendahl

113. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

114. By their conduct, as described herein, Defendants are liable to Plaintiff under

42 U.S.C. § 1983 for the violation, under color of state law, of the constitutional substantive due process right to liberty under the Fifth and Fourteenth Amendments to the United States Constitution.

115. At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from deprivation of liberty without due process of law.

116. Any reasonable police officer knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

117. These individual Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith and in reckless disregard of Plaintiff's federally protected rights and acted in concert and joint action with each other.

118. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial. Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

119. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual

Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional and statutory rights of Plaintiff.

FIFTH CLAIM FOR RELIEF

42 U.S.C. § 1983 and Fifth and Fourteenth Amendment

( Right Against Fabricated Evidence)

Against Defendants Knighton and Lovendahl

120. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

121. By their conduct, as described herein, Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for the violation, under color of state law, of the constitutional due process right to be free from prosecution and conviction based on fabricated evidence. Defendants Knighton and Lovendahl fabricated inculpatory evidence against Plaintiff for use in her criminal prosecution.

122. At the time of the complained of events, Plaintiff had the clearly established Due process right to be free from prosecution and conviction based on manufactured evidence.

123. Any reasonable police officer knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

124. These individual Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith and in reckless disregard of Plaintiff's federally protected rights and acted in concert and joint action with each other.

125. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial. Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

126. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional and statutory rights of Plaintiff

SIXTH CLAIM FOR RELIEF

42 U.S.C. § 1983 and First Amendment (Right to Freedom of Association)

Against Defendants Knighton and Lovendahl

127.   Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

128.   By their conduct, as described herein, Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for the violation, under color of state law, of the constitutional right to freedom of association under the First Amendment to the United States Constitution. Plaintiff's false charge brought by these Defendants resulted in Plaintiff's suspension from her work and trespass from all Deseret Industries stores which deprived Plaintiff of her right to associate with others in pursuit of social and economic ends.

129.   At the time of the complained of events, Plaintiff had the clearly established First Amendment right to freedom of association.

130.   Any reasonable police officer knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

131.   These individual Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith and in reckless disregard of Plaintiff's federally protected rights and acted in concert and joint action with each other.

132.   As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and

may continue to incur further medically or other special damages related expenses, in amounts to be established at trial. Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

133. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional and statutory rights of Plaintiff

SEVENTH CLAIM FOR RELIEF

42 U.S.C. § 1983 and Fourteenth Amendment

(Civil Conspiracy to Violate the Right to Equal Protection)

Against Defendants Knighton, Lovendahl, Ricks, Perry, Off Duty Services, Inc. and Deseret Industries

134. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

135. By their conduct, as described herein and acting under color of state law, Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for the violation of the constitutional right to enjoy the equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

136. Plaintiff, as a Lithuanian citizen, is a member of a protected class, and thus had the clearly established equal protection right under 42 U.S.C. § 1983 to be free from arrests and the filing of false charges motivated by nationality. Defendants Deseret Industries and Off Duty Services Inc. through their Defendant employees Ricks, Perry, Knighton and Lovendahl reached an understanding to violate Plaintiff's equal rights. Defendants' conspiracy to arrest and prosecute Plaintiff was motivated by Plaintiff's foreign status.

137. Any reasonable person knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

138. These Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith and in reckless disregard of Plaintiff's federally protected rights and acted in concert and joint action with each other.

139. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial. Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

140. In addition to compensatory, economic, consequential and special damages,

Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional and statutory rights of Plaintiff.

EIGHTH CLAIM FOR RELIEF

42 U.S.C. § 1983

Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the First, Fourth, Fifth and Fourteenth Amendments (Against Salt Lake County, the Unified Police Department, City of Taylorsville, Chiefs of Police Winder and Wyant, Off Duty Services Inc. and Deseret Industries)

141. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and ant length set forth herein.

142. The Defendants to this claim at all times relevant hereto were acting under the color of state law.

143. Plaintiff had the clearly established rights at the time of the complained conduct:

a. the right to exercise her free speech right under the First Amendment without retaliation;

b. the right to be secure in her person from unreasonable seizure under the Fourth Amendment;

c. the right to be free from discrimination under the Equal Protection Clause of the Fourteenth Amendment;

d. the right to freely associate under the First Amendment;

e.   the substantive due process right to liberty and truthful evidence under the Fourth Amendment.

144.  Defendant Salt Lake County, Unified Police Department, City of Taylorsville, Chiefs of Police Winder and Wyant, Off Duty Services Inc. and Deseret Industries knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

145. The acts or omissions of these Defendants, as described herein, intentionally deprived Plaintiff of her constitutional rights and caused her other damages.

146.  These Defendants developed and maintained policies, procedures, customs, and/or practices and/or failed to properly train and/or supervise its employees exhibiting deliberate indifference to people's constitutional rights, which were moving forces behind and proximately caused the violations of Plaintiff's constitutional rights as set forth herein and resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

147.   In light of the duties and responsibilities of those police officers that participate in arrests and preparation of police reports on alleged crimes, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

148. The deliberately indifferent training and supervision provided by Defendants resulted from a conscious or deliberate choice to follow a course of action from

among various alternatives available to Defendants and were moving forces in the constitutional and federal violation injuries complained of by Plaintiff.

149. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial. Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

150. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

NINTH CLAIM FOR RELIEF

State Law Claim

Utah Constitution, Article I, Section 1 (Right to Protest Against Wrongs)

Against Defendants Knighton and Lovendahl

151.  Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

152. By their conduct, as described herein, Defendants are liable to Plaintiff, under Utah Constitution, Article I, Section 1,  for the violation of  her right to protest against wrongs.

153. Plaintiff protested against Defendants' violent treatment of Castagnoli  by appearing at the scene and verbally expressing her disapproval of their actions. Defendants interfered with  the Plaintiff's right to protest  by falsely arresting and prosecuting Plaintiff

154. At the time of the complained of events, Plaintiff had  the clearly established state constitutional right to protest against wrongs.

155. Any reasonable police officer knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

156. These individual Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith and in reckless disregard of Plaintiff's constitutionally  protected rights and  acted in concert and joint action with each other.

157.  As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct,

Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial. Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

158. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

TENTH CLAIM FOR RELIEF

State Law Claim

Utah Constitution, Article I, Section 1 and Utah Code Ann. § 34-34-2

( Right to Enjoy Life )

Against Defendants Knighton, Lovendahl, Ricks and Perry

159. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

160. By their conduct, as described herein, Defendants are liable to Plaintiff under Utah Constitution, Article I, Section 1 for the violation of the constitutional right

to enjoy life. Under Utah Code Ann. § 34-34-2, right to enjoy one's life includes the right to work.

161. Plaintiff's false charge resulted in Plaintiff's suspension from her work and trespass from all Deseret Industries' stores. Due to the trespass order and emotional injury sustained by Plaintiff from her malicious prosecution, Plaintiff was forced to terminate her employment with Deseret Industries. Plaintiff's constructive termination, and thus an abridgment of her right to enjoy her life through her work, was a direct consequence of the procurement of malicious prosecution against Plaintiff.

162. At the time of the complained of events, Plaintiff had the clearly established state constitutional right to enjoy her life.

163. Any reasonable individual knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

164. These individual Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith and in reckless disregard of Plaintiff's constitutionally protected rights and acted in concert and joint action with each other.

165. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur

further medically or other special damages related expenses, in amounts to be established at trial. Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

166. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional and statutory rights of Plaintiff.

ELEVENTH CLAIM FOR RELIEF

State Law Claim

Utah Constitution, Article I, Section 1 and Utah Code Ann. § 13-7-3

(Right to Free and Equal Access to Business Establishments)

Against Defendants Knighton, Lovendahl, Ricks and Perry

167. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

168. By their conduct, as described herein, Defendants are liable to Plaintiff under Utah Constitution, Article I, Section 1 and Utah Code Ann. § 34-34-2 for the violation of the state right to equal access to business establishments .

169.    Plaintiff's false charge   resulted in   Plaintiff's   trespass   from all Deseret Industries' stores which effectively deprived Plaintiff of her state constitutional right to acquire property by way of purchasing goods at a Deseret Industries store. This deprivation was motivated in part by Defendants' animus against Plaintiff as a foreign national in violation of Utah Code Ann. § 13-7-3.

170.   At the time of the complained of events, Plaintiff had the clearly established state constitutional right to acquire goods of one's choosing freely and/or without discriminatory animus.

171. Any reasonable individual knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

172. These Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith and in reckless disregard of Plaintiff's constitutional protected rights and acted in concert and joint action with each other.

173. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial. Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

174. In addition to compensatory, economic, consequential and special damages,

Plaintiff is entitled to punitive damages against each of the individually named Defendants under in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional and statutory rights of Plaintiff.

TWELFTH CLAIM FOR RELIEF

State Law Claim False Arrest

Against Defendants Knighton and Lovendahl

175. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

176. By their conduct described herein, Defendants Knighton and Lovendahl's arrest of Plaintiff was wrongful, in bad faith and not supported by any legally justifiable reason.

177. These individual Defendants engaged in the conduct described by this Complaint willfully, maliciously and in bad faith and acted in concert and joint action with each other.

178. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct,

Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial. Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

179. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under in that the actions of each of these individual Defendants have been taken maliciously and willfully.

THIRTEENTH CLAIM FOR RELIEF

State Law Claim Malicious prosecution

Against Defendants Knighton and Lovendahl

180. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

181. By conduct described herein Defendants Knighton and Lovendahl wrongfully initiated criminal proceeding knowing that no crime had been committed by Plaintiff.

182. These individual Defendants engaged in the conduct described by this Complaint willfully, maliciously and in bad faith and acted in concert and joint action with each other.

183. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial. Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

184. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under in that the actions of each of these individual Defendants have been taken maliciously and willfully.

FOURTEENTH CLAIM FOR RELIEF

State Law Claim Abuse of process

Against Defendants Knighton and Lovendahl

185. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

186. By conduct described herein, Defendants Knighton and Lovendahl abused the criminal process by initiating criminal prosecution of Plaintiff to retaliate for Plaintiff's complaint against them, discredit Plaintiff as an eyewitness to their

misconduct and    legitimize their unlawful use of police authority against Castagnoli and Plaintiff.

187.  Defendants knew that no crime had been committed by Plaintiff to give them an authority to cite Plaintiff.  Still, Defendants used their  UPD citation form  not authorized for the use in a non-UPD jurisdiction, to  cite Plaintiff. Defendants' prosecution of  Plaintiff using an unauthorized  citation form was a perversion of the criminal process in order to accomplish an improper purpose.

188.  These individual Defendants engaged in the conduct described by this Complaint willfully, maliciously and in bad faith and  acted in concert and joint action with each other.

189.  As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial.  Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

190.  In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under  in that the actions of each of these individual Defendants have been taken maliciously and willfully.

FIFTEENTH CLAIM FOR RELIEF

State Law Claim Assault and Battery

Against Defendant Lovendahl

191. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

192. By conduct described herein Defendant Lovendahl willfully and maliciously assaulted Plaintiff by chest-bumping her twice in the store's parking lot.

193. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered fright, humiliation and embarrassment.

194. Plaintiff is entitled to punitive damages against Defendant Lovendahl in that the actions by Defendant Lovendahl had been taken maliciously and willfully.

SIXTEENTH CLAIM FOR RELIEF

State Law Claim Intentional infliction of emotional distress

Against Defendants Knighton and Lovendahl, Ricks and Perry

195. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

196. By conduct described herein Defendants Knighton and Lovendahl's outrageous conduct of arresting and prosecuting Plaintiff was intended to cause Plaintiff

severe emotional distress.

197. These individual Defendants engaged in the conduct described by this Complaint willfully, maliciously and in bad faith and acted in concert and joint action with each other.

198. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial. Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

199. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under in that the actions of each of these individual Defendants have been taken maliciously and willfully.

SEVENTEENTH CLAIM FOR RELIEF

State Law Claim (Respondeat Superior)

Against Defendants Salt Lake County, Unified Police Department, City of Taylorsville, Off Duty Services, Inc. and Deseret Industries.

200. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in all paragraphs set forth herein with the same force and effect as is more fully and at length set forth herein.

201. The conduct of Defendants Knighton, Lovendahl, Ricks and Perry occurred during the course and scope of their official duties and functions and while they were acting as agents and/or employees of Defendants Salt Lake County, the Unified Police Department, City of Taylorsville, Off Duty Services, Inc. and Deseret Industries.

202. Defendants Salt Lake County, the Unified Police Department, City Of Taylorsville, Off Duty Services, Inc. and Deseret Industries are liable to Plaintiff under the common law doctrine of respondeat superior.

203. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling her to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial. Plaintiff may suffer lost future earnings and impaired earnings capacities in amounts to be ascertained in trial.

204. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named

Defendants under in that the actions of each of these individual Defendants have been taken maliciously and willfully.

PRAYER FOR RELIEF

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and grant:

A. compensatory damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B. economic losses on all claims allowed by law;

C. special damages in an amount to be determined at trial;

D. punitive damages on all claims allowed by law and in an amount to be determined at trial;

E. attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

F. pre- and post-judgment interest at the lawful rate; and,

G. any further relief that this court deems just and proper, and any other appropriate relief at law.

RESPECTFULLY SUBMITTED this 13th day of March, 2018

Kristina Zemaitiene